IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

J. GRAHAM ALLAN and
BRENDA ALLAN,                                    Civ No. 05-6036-AA

       Plaintiffs,                          OPINION AND ORDER

    v.

GUARANTY RV CENTERS and
MONACO COACH CORPORATION,
a Delaware corporation,

       Defendants.
_____

Steve C. Baldwin
Glenda R. Sloan
Watkinson Laird Rubenstein Baldwin & Burgess, P.C.
101 East Broadway, Suite 200
Eugene, OR 97401
    Attorneys for plaintiffs

Laura T.Z. Montgomery
Gleaves Swearingen Potter & Scott LLP
975 Oak Street, Suite 800
Eugene, OR 97440
    Attorney for defendants

1 - OPINION AND ORDER

AIKEN, Judge:

Plaintiffs J. Graham Allan and Brenda Allan filed suit against defendants Guaranty RV Centers (Guaranty) and Monaco Coach Corporation (Monaco) alleging violations of Oregon's Lemon Law, Or. Rev. Stat. § 646.315 et seq., revocation of acceptance pursuant to Or. Rev. Stat. § 72.6080, and breach of warranty. Plaintiffs also allege a violation of the Oregon Consumer Warranty Act, Or. Rev. Stat. § 72.8010 et seq., against Monaco specifically. Defendants move for summary judgment on all claims. Plaintiffs concede summary judgment on their Lemon Law Claim against Guaranty and their revocation claim against Monaco. Therefore, the court considers plaintiffs' remaining claims.

BACKGROUND

On December 26, 2002, plaintiffs, who are residents of California, purchased a recreational vehicle (RV) manufactured by Monaco and sold by Guaranty. Monaco is incorporated in Delaware with its principal place of business in Oregon. Guaranty is an Oregon corporation with its principal place of business in Oregon. While Guaranty is a dealer in Monaco's products, it is not an agent of Monaco.

Plaintiffs took receipt of the RV on January 8, 2003. They experienced numerous problems with it, including a cracked roof, a faulty engine compartment door, a smoking generator, and poor TV reception. Affidavit of Brenda Allan, Ex. 9, pp. 2-3. Beginning

2 - OPINION AND ORDER

on February 2, 2003, plaintiffs sent multiple letters to both Monaco and its authorized repair shops concerning numerous problems with the RV.  On June 23, 2003, plaintiffs first presented the RV for repairs at an authorized Monaco repair shop.  According to plaintiffs, the RV "was in the shop for 230 days" out of the first year of ownership.  Id. at p. 3.  Plaintiffs' repair records indicate that the RV underwent repairs on approximately six different occasions between the date of purchase and January 2004. While some of the repairs took only a week or less, on two occasions the RV was in the shop for three and four months. Further, although plaintiffs concede that many of the defects were repaired, they maintain that several were not.

Finally, on December 13, 2004, plaintiffs informed defendants that they wished to return the RV for a full refund of the purchase price, $355,786.50, plus $2,000 in attorney fees.  Defendants denied plaintiffs' request, and on December 23, 2004, plaintiffs filed suit.

SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The materiality of a fact is determined by the substantive law on the

issue. T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n.,
809 F.2d 626, 630 (9th Cir. 1987). The authenticity of a dispute
is determined by whether the evidence is such that a reasonable
jury could return a verdict for the nonmoving party. Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of
a genuine issue of material fact. Celotex Corp. v. Catrett, 477
U.S. 317, 323 (1986). If the moving party shows the absence of a
genuine issue of material fact, the nonmoving party must go beyond
the pleadings and identify facts which show a genuine issue for
trial. Id. at 324.

Special rules of construction apply to evaluating summary
judgment motions: (1) all reasonable doubts as to the existence of
genuine issues of material fact should be resolved against the
moving party; and (2) all inferences to be drawn from the
underlying facts must be viewed in the light most favorable to the
nonmoving party. T.W. Elec., 809 F.2d at 630.

DISCUSSION

A.  Oregon Lemon Law Claim against Monaco

Plaintiffs assert that Monaco must accept return of the RV and
refund to them the full purchase price paid, according to Or. Rev.
Stat. § 646.335, Oregon's "Lemon Law." Monaco seeks summary
judgment on plaintiffs' Lemon Law claim on the ground that
plaintiffs are not "consumers" and therefore cannot pursue remedies
available under Or. Rev. Stat. § 646.335. Further, Monaco argues

4 - OPINION AND ORDER

that even if plaintiffs are consumers, they failed to give Monaco the opportunity to correct any alleged defects as required by Or. Rev. Stat. § 646.325(3).

Oregon's Lemon Law provides that consumer purchasers of new motor vehicles, including RVs, are entitled to return a vehicle for a refund of the purchase price when a manufacturer cannot conform the vehicle to the manufacturer's express warranty. Or. Rev. Stat. § 646.325. "Consumer" is defined as a "purchaser or lessee, other than for purposes of resale, of a new motor vehicle normally used for personal, family or household purposes." Or. Rev. Stat. § 646.315

Monaco cites several reasons why plaintiffs did not purchase the RV as consumers. First, plaintiffs are owners of a Harley Davidson motorcycle dealership, and they issued a $5,000 check for the RV deposit on their business account. Declaration of Laura T.Z. Montgomery (Montgomery Decl.), Ex. 5. Second, plaintiffs declared that they were exempt from California sales tax, Montgomery Decl., Ex. 10, and plaintiffs never registered or titled their RV in California or any other state. Further, plaintiffs' bank secured its interest in the RV with a UCC filing, which describes the RV as "Inventory, included but not limited to: 2003 Holiday Rambler Motorhome VIN# 1RF14581631023924." Montgomery Decl., Ex. 13. Finally, plaintiffs admit that they used the RV for both personal and business-related purposes. Montgomery Decl., Exs. 7-8. Accordingly, Monaco argues that plaintiffs bought the RV as "dealers," and they cannot now avail themselves of Oregon's

5 - OPINION AND ORDER

consumer protection laws.

However, the fact that plaintiffs took advantage of tax and titling benefits in California as dealers does not necessarily mean that plaintiffs are not consumers for purposes of Oregon's Lemon Law.   In order to meet the definition of "consumer," plaintiffs must have normally used their RV for personal purposes, and defendants do not dispute that plaintiffs used the RV primarily for personal recreational purposes.   Even though plaintiffs admit to using the RV on occasion for business related purposes, such as attending a Harley Davidson dealer's convention, the definition of "consumer" does not prohibit business use on a limited basis.

Additionally, plaintiffs personally guaranteed the loan for the RV and made payments on the loan as individuals.   Further, despite the fact that the bank's UCC form referred to the RV as inventory, Monaco presents no evidence that plaintiffs held the RV for resale.  Viewing these facts in the light most favorable to the plaintiffs, I cannot find as a matter of law that plaintiffs are not consumers for purposes of Oregon's Lemon Law.

Monaco next argues that even if plaintiffs are consumers, they failed to meet the requirements of Or. Rev. Stat. § 646.325, which states that the remedies provided to consumers under Oregon's Lemon Law are available only if:   (1) the new motor vehicle does not conform to the manufacturer's warranty; (2) the consumer reports each nonconformity to the manufacturer, its agent or its authorized dealer, for the purpose of repair or correction; and (3) the manufacturer has received direct written notification from the

6 - OPINION AND ORDER

consumer and has had an opportunity to correct the alleged defects.

Monaco asserts that plaintiffs failed to give it an opportunity to correct the alleged defects. Monaco relies on an April 14, 2004 letter in which Monaco offered to correct any alleged defect, an offer which plaintiffs apparently declined. Montgomery Decl., Ex. 11. However, plaintiffs have presented evidence that their RV was at authorized Monaco repair shops for approximately 230 days during the first year of ownership. Further, plaintiffs present thirty-four pages of letters identifying various problems with the RV, and at least one letter was sent to both an authorized repair shop as well as Monaco. Affidavit of J. Graham Allan, Exs. 1-5. Hence, the April 2004 letter does not establish conclusively that plaintiffs failed to give Monaco the requisite notice and opportunity to correct under § 646.325(3). At a minimum, a question of fact remains as to whether plaintiffs afforded Monaco an opportunity to correct the alleged defects.

In sum, because issues of material fact remain regarding plaintiffs' status as consumers and their compliance with Or. Rev. Stat. § 646.325(3), Monaco's motion for summary judgment on plaintiffs' Lemon Law claim is denied.

B.  Oregon Consumer Warranty Act Claim against Monaco

Plaintiffs also assert that Monaco violated Oregon's Consumer Warranty Act (the Act), Or. Rev. Stat. § 72.8010 et seq, because Monaco failed to maintain sufficient service and repair facilities in Oregon to carry out the terms of its limited warranty. As with

7 - OPINION AND ORDER

plaintiff's Lemon Law claim, Monaco replies that plaintiffs purchased the RV as dealers, and therefore may not avail themselves of Oregon's Consumer Warranty Act.  Specifically, Monaco asserts that the Act does not apply to goods sold as inventory and emphasizes that the UCC statement used to secure the lender's interest in the RV described the RV as "Inventory."  Montgomery Decl., Ex. 13.

The Consumer Warranty Act defines a consumer good to include "a new motor vehicle . . . used or bought for use primarily for personal, family or household purposes."  Or. Rev. Stat. § 72.8010(1).  Consistent with the analysis above concerning Oregon's Lemon Law, this definition does not preclude a finding that plaintiffs' RV was a consumer good in light of the evidence presented.  Although the UCC statement cited by defendants describes the RV as inventory, Monaco does not dispute the fact that plaintiffs used the RV primarily for personal use and presents no evidence that plaintiffs offered the RV for resale.  Therefore, a material issue of fact remains whether the RV is a consumer good, and defendants' motion for summary judgment is denied.

C.  Revocation of Acceptance Claim against Guaranty

Plaintiffs assert that they revoked acceptance of the RV on December 4, 2004.  See Affidavit of Steve Baldwin, Ex. 2.  However, Guaranty argues that plaintiffs failed to give timely notice of revocation, because they waited almost two years after taking delivery of the RV to do so.

Or. Rev. Stat. § 72.6080 requires that revocation of

8 - OPINION AND ORDER

acceptance occur within a "reasonable" time after the buyer discovers or should have discovered that a nonconformity substantially impairs the value of the motor vehicle. What is a reasonable time depends on the facts and circumstances of each case. <u>Wadsworth Plumbing & Heating Co., Inc., v. Tollycraft Corp.</u>, 277 Or. 433, 436, 363 P.2d 54 (1977). Although plaintiffs became aware of all, or virtually all, problems with the RV within the first few months of ownership, plaintiffs communicated with Guaranty multiple times over the course of the first year they owned the RV concerning their complaints. Affidavit of J. Graham Allan, Exs. 1-3, 5. Further, plaintiffs' RV was out of service for many months while Guaranty and other certified repair shops attempted to correct the defects. Thus, even though plaintiffs waited two years to notify Guaranty of their intent to revoke acceptance, I cannot find that such delay, as a matter of law, fails to comply with the "reasonable time" requirement under § 72.6080. Rather, a genuine issue of material fact exists as to whether plaintiffs notified Guaranty of their intent to revoke in a reasonably timely manner, precluding summary judgment on plaintiffs' action for revocation of acceptance under Or. Rev. Stat. § 72.6080.

<u>D.  Breach of Express Warranty against Monaco</u>

Plaintiffs assert that Monaco breached its express limited warranty, because it failed to repair the alleged defects according to the terms of its warranty. Monaco moves for summary judgment on grounds that plaintiffs did not notify Monaco of the defects within

9 - OPINION AND ORDER

the required time period.

Monaco's limited warranty extends for 12 months or 24,000 miles after purchase, whichever comes first. However, the warranty provides that if the RV is used for "any [] commercial or business purposes whatsoever, the Limited Warranty provided by Warrantor covers your new motorhome . . . for ninety (90) days from the original retail purchase date or the first 24,000 miles of use, whichever occurs first." Montgomery Decl., Ex. 14, p. 1.

Monaco asserts that plaintiffs admitted to using the RV for business-related purposes, and plaintiffs do not rebut Monaco's assertion. Indeed, plaintiffs indicated on two customer satisfaction surveys that they used the RV for personal and business purposes. Montgomery Decl., Exs. 7-8, p. 4. Therefore, argues Monaco, the warranty's coverage is limited to ninety days, and plaintiffs failed to present their RV for repair within ninety days after the date of purchase on December 26, 2002. Montgomery Decl., Ex. 11.

Plaintiffs respond that even if the warranty is limited to ninety days, the warranty remained in effect for twelve months with respect to the "steel or aluminum frame structure of the sidewalls, roof, and rear and front walls." Montgomery Decl., Ex. 14, p. 1. Regardless, plaintiffs did not allege specific defects concerning the "frame structure of the sidewalls, roof, and rear or front walls," and plaintiffs present no evidence that they sought repairs for such a defect. Complaint, pp. 7-8. In fact, Monaco maintains that it had no notice of an alleged defect with the "frame

structure of the sidewalls, roof, and rear or front walls" until December 15, 2004, when plaintiffs presented a report prepared by an expert who examined the RV for purposes of the present litigation. See Affidavit of Steve C. Baldwin, Ex. 1. Although plaintiffs make the conclusory assertion that a defect to the "frame structure of the sidewalls, roof, and rear or front walls" occurred within the warranty period, they fail to identify what evidence establishes this fact. Therefore, defendant's motion for summary judgment on this issue is appropriate. If plaintiffs subsequently present evidence that they notified Monaco of such a defect within the warranty period, the court will entertain a motion for reconsideration on this claim.

E.  Breach of Express and Implied Warranty against Guaranty

Finally, plaintiffs claim that Guaranty breached its express and implied warranties of merchantability and fitness for a particular purpose. Guaranty moves for summary judgment on the ground that it effectively disclaimed all warranties in the purchase order signed by plaintiffs.

A dealer may disclaim all implied warranties of merchantability and fitness for a particular purpose, but only if the disclaimer of warranties is in writing and conspicuous. Or. Rev. Stat. § 72.3160(2). Plaintiffs argue that Guaranty's disclaimer is not conspicuous, and therefore ineffective, because the disclaimer was item 17 of 19 on the back page of the purchase order, all items were written in the same small font, including the disclaimer, and though the disclaimer was in bold type, other items

11 - OPINION AND ORDER

were also in bold type.

Guaranty responds that plaintiffs signed the purchase order, which specifically directed the purchaser to read all items on the face and reverse sides, and the reverse side included additional terms and conditions of the sale, one of which stated in bold print that Guaranty disclaimed all warranties.  Accordingly, Guaranty argues that it effectively and conspicuously disclaimed all warranties, and plaintiffs' breach of warranty claims are barred.

Whether a warranty disclaimer is conspicuous is a matter of law.  Or. Rev. Stat. § 71.2010(10); Duyck v. Northwest Chemical Corp., 94 Or. App. 111, 116, 764 P.2d 943 (1988).  Under Or. Rev. Stat. § 71.2010(10):

> A term is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it.  A printed heading in capitals (as: NONNEGOTIABLE BILL OF LADING) is conspicuous. Language in the body of a form is 'conspicuous' if it is in larger or other contrasting type or color.

Whether Guaranty's disclaimer was conspicuous as a matter of law is a borderline decision.  All of the language on the back of the purchase order, including items 1 through 19, is of the same, very small print.  The applicable warranty disclaimer in item 17, along with items 15 and 18, are printed in bold type.  However, the bold type is noticeably faint; the eye is not drawn to the disclaimer, which clearly is the meaning of the statute when defining "conspicuous." As a whole, the back of the purchase order is dense, the print is tiny, and the bolded sections are only marginally more conspicuous than the remaining sections.

The Oregon Court of Appeals has addressed the conspicuousness of contractual terms on several occasions.  See Young v. Continental Crane & Rigging Co., 183 Or. App. 563, 568-70, 53 P.3d 465 (2002).  For example, in Atlas Mutual Ins. v. Moore Dry Kiln, 38 Or. App. 111, 114, 589 P.2d 1134 (1979), the court held that a provision was conspicuous because it was located in the middle of a one-page contract, not "hidden in small print" within a long document, and because it began with a boldfaced disclaimer of all warranties.

Likewise, in Duyck v. Northwest Chemical Corp., 94 Or. App. 111, 118, 764 P.2d 943 (1988), the court concluded that a warranty disclaimer would have caused a reasonably prudent person to read the language carefully, because the provision appeared under a boldface heading "NOTICE OF WARRANTY" and was printed in contrasting capital letters.

In contrast, in Anderson v. Ashland Rental Co., 122 Or. App. 508, 511, 858 P.2d 470 (1993), the court relied on several factors in finding a disclaimer not conspicuous.  While the front page of the contract used "various attention getting devices" – including six different font sizes, boldface type, capital letters, red type, and reverse lettering - the back page, where the disclaimer was located, was printed in type so light that it was barely legible. Id., 858 P.2d 470.  Further, the court found that even though the disclaimer was located under a caption printed in boldface type of a different color, its visual impact was minimized by adjacent captions printed in bright red type, and the body of the disclaimer

13 - OPINION AND ORDER

was not printed in a larger or other contrasting type or color so as to make it conspicuous. Id., 858 P.2d 470. Thus, because the disclaimer was one of eight sections on the back of the form, all printed in the same faint, barely legible type, with identical headings, the disclaimer "fell far short of the ORS 71.2010(10) criteria." Id., 858 P.2d 470.

Finally, in Seibel v. Layne & Bowler, 56 Or. App. 387, 641 P.2d 668 (1982), the court found that a disclaimer was not conspicuous because the terms covered approximately three-quarters of the page, the type was small, and the paragraphs were printed without indentation or extra spacing between them. Id. at 391, 641 P.2d 668. Notably, the court held that "'a provision is not conspicuous when there is only a slight contrast with the balance of the instrument.'" Id. at 390-91, 641 P.2d 668 (quoting James J. White and Robert S. Summers, Uniform Commercial Code § 12-5, 441 (2d ed. 1980)).

I find that Guaranty's warranty disclaimer more closely resembles those in Anderson and Seibel than those in Atlas Mutual Insurance or Duyck. The purchase order is a preprinted form on white paper with the warranty disclaimer provision, along with eighteen other provisions, printed on the back of the sale form in very small font. Unlike the disclaimers in Atlas Mutual Insurance and Duyck, the Guaranty warranty disclaimer does not stand out from the other provisions on the back of the form in either font size, type, color, or capitalization. Rather, the warranty disclaimer is of only marginally darker type, and there is but a "slight

14 - OPINION AND ORDER

contrast" with the balance of the instrument.  <u>Seibel</u>, 56 Or. App. at 390-91, 641 P.2d 668.   In sum, the disclaimer does not adequately stand out against the other language so to be "conspicuous" within the meaning of Or. Rev. Stat. § 71.2010(10). Therefore, defendant's motion for summary judgment is denied.

CONCLUSION

For the reasons given above, defendants' Motion for Summary Judgment (doc. 21) is GRANTED in part AND DENIED in part. Plaintiffs' breach of warranty claim against Monaco is DISMISSED. IT IS SO ORDERED.

Dated this 15 day of April, 2006.

Ann Aiken<br>United States District Judge

15 - OPINION AND ORDER